**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| JOSEPH C. VIENNEAU | : | CASE NO. 07-43690-JBR |
| M. JEANNETTE VIENNEAU | : | |
| <u>DEBTOR                              </u> | : | |
| JOSEPH C. VIENNEAU and , | : | |
| M. JEANNETTE VIENNEAU | : | |
| Plaintiffs | : | |
| v. | : | Adv. Pro. No 08-4021 |
| SAXON CAPITAL, INC., SAXON MORTGAGE | : | |
| SERVICES, and MORGAN STANLEY & Co., | : | |
| INCORPORATED, | : | |
| Defendants. | : | |
| <u>                                                                        </u> | : | |

**MEMORANDUM OF DECISION ON MOTIONS TO DISMISS**

This matter came before the Court for hearings on the Motion to Dismiss of Saxon Capital, Inc. ("Saxon Capital") and Saxon Mortgage Services ("Saxon Mortgage" and collectively with Saxon Capital, the "Saxon Defendants") [# 15] as well as the "Partial Motion to Dismiss" filed by Morgan Stanley & Co, Incorporated ("Morgan Stanley") [#31]. The Saxon Defendants submitted a memorandum in support of their motion [# 16], and joined in the one filed by Morgan Stanley [# 32].[1] The Saxon Defendants and Morgan Stanley request dismissal of Counts III through VIII of the Amended Complaint, which seek damages for alleged violations of federal and state law primarily as a result of letters sent and actions taken by

---

[1] Although Morgan Stanley's memorandum is styled as its own, counsel's signature block indicates it was filed on behalf of the Saxon Defendants as well.

Defendant Saxon Mortgage postpetition.  The Plaintiffs oppose both motions to dismiss [# 22 and # 44].

**FACTS**

On October 7, 2007 (the "Petition Date"), the Debtors filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code.  At that time the Debtors owned real estate in Baldwinville, Massachusetts (the "Property") which was encumbered by a mortgage held by NovaStar Home Mortgage Inc. ("NovaStar").  According to the Amended Complaint, the mortgage was subsequently transferred to either Saxon Capital or Saxon Mortgage.  All correspondence attached as exhibits to the Amended Complaint emanate from Saxon Mortgage.  In their Statement of Intention, the Debtors noted their intent to surrender the Property.  On February 7, 2008 the Debtors' discharge orders entered.  The Chapter 7 Trustee has filed a Report of No Distribution.

On October 27, 2007 NovaStar filed a motion for relief to foreclose on the Property but withdrew the motion a few weeks later.   Subsequently Saxon Mortgage sent the Debtors a Mortgage Loan Statement dated as of December 17, 2007 advising the Debtors, among other things, that over $16,000, including current and delinquent payments along with various fees and late charges, was due.  The single page was perforated so the Debtors could detach the payment coupon and send it, along with their payment, to Saxon Mortgage.  Just above the perforation, the Mortgage Loan Statement contained the following italicized language:

> *If you are a borrower on this loan and have filed for bankruptcy protection, this statement is for informational purposes only and is not attempting any act to collect, recover, or offset any discharged debt as your personal liability*.

On January 7, 2008 the Debtors' bankruptcy attorney sent Saxon Mortgage a certified letter advising it of the Debtors' bankruptcy, reserving the Debtors' right to seek sanctions for violation of the automatic stay, and directing that all future correspondence by sent to the attorney, not to the Debtors. The letter was received by Saxon Mortgage on January 17, 2008. Although the actual date on which Saxon Mortgage sent the Debtors another Mortgage Loan Statement is unclear, the Debtors received one dated February 18, 2008. The February 2008 statement was substantially similar to the December 2007 Mortgage Loan Statement, only the amount due had increased to over $20,000. On or about February 19, 2009 Saxon Mortgage sent a letter, addressed only to the husband Debtor, notifying him that Saxon Mortgage had obtained forced place insurance for the Property and that the insurance premium would be charged to the loan. A copy of the Evidence of Insurance was enclosed with the letter. The Evidence of Insurance lists Southwest Business Corporation ("Southwest") as the insurance agency while American Modern Surplus Lines ("American Modern") is listed as the actual insurer.

On February 25, 2008 the Debtors' attorney sent Dennis Stowe, the president of Saxon Mortgage, a demand letter pursuant to M.G.L. c. 93A, demanding $25,000 plus costs and attorneys' fees for violating the automatic stay, the discharge injunction, and M.G.L. c. 93A. Similar letters were sent to Southwest and American Modern. Saxon Mortgage responded by sending the Debtors a letter advising them that Saxon Mortgage had received the "written request" and would be responding "soon." On March 21, 2008 Saxon Mortgage sent the virtually identical letter to the Debtors. In the interim, on or about March 18, 2008 the Debtors received another Mortgage Loan Statement showing that the amount due was in excess of $21,000 and containing the same statement regarding bankruptcy as had the earlier Mortgage Loan Statements.

**TRAVEL OF THE CASE**

On February 27, 2008 the Debtors commenced the above adversary proceeding against Saxon Mortgage, Saxon Capital, Morgan Stanley, which owns the Saxon Defendants, Southwest, and American Modern. Shortly thereafter the Plaintiffs amended their complaint whereby they sought damages against all of the Defendants: for violating the automatic stay (Count I), the discharge injunction (Count II), the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(5) (Count III), and the Massachusetts version of a fair debt collection act, M.G.L. c. 93§ 49 (Count IV); for breaching the covenant of good faith and fair dealing (Count V), intentional infliction of emotional distress (Count VI), the negligent infliction of emotional distress (Count VII); and for violating M.G.L. c. 93A (Count VIII). Since filing the amended complaint, the Plaintiffs dismissed the action against Southwest and American Modern with prejudice.

The Saxon Defendants moved to dismiss the Counts III through VIII of the amended complaint on the grounds that those causes of action are not core matters and that those claims are preempted by the Bankruptcy Code. Morgan Stanley filed its motion to dismiss Counts III through VIII on the grounds that the Bankruptcy Code impliedly repealed the FDCPA and preempts state law remedies, that it is not a debt collector under the FDCPA, and that this Court lacks jurisdiction over the personal injury claims. All of the Defendants joined in the Memorandum in Support of Morgan Stanley's Partial Motion to Dismiss. The Plaintiffs oppose both motions. The Court stayed the adversary proceeding pending a decision by the First Circuit Court of Appeals of an appeal of the district court's order affirming this Court's decision in *Nosek v. Ameriquest Mortgage Company*, 363 B.R. 643 (Bankr. D. Mass. 2007). That decision entered,

544 F.3d 34 (1st Cir. 2008).[2]

**POSITION OF THE PARTIES**

The Defendants seek dismissal of Counts III through VIII of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6), made applicable to the adversary proceeding by Fed. R. Bankr. P. 7012(b). Their arguments fall into four categories: (i) those causes of action are not within the core jurisdiction of this Court, in part because at least some of them are based on state law; (ii) the causes of action are preempted by the Bankruptcy Code; (iii) this Court lacks jurisdiction over personal injury torts; and (iv) at least with respect to Morgan Stanley, that it is not a debt collector to whom the FDCPA applies. They urge the Court to follow Judge Young's decision in *Nosek I* and the Ninth Circuit's decision in *Walls v. Wells Fargo*, 276 F.3d 302 (9th Cir. 2002), and determine as a matter of law that the Bankruptcy Code preempts these claims, including the FDCPA claim.

Not surprisingly the Plaintiffs allege that the claims fall within the Court's core jurisdiction, or at least within its related to jurisdiction, and assert that the Court should follow "the more conventional approach to statutory construction" taken by the Seventh Circuit in *Rudolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004), and a recent unpublished decision, *Eastman v. Baker Recovery Services*, A.P. 08-5505 (Bankr. D. Tx. April 17, 2009), a copy of which is attached to the Plaintiff's Supplemental Memorandum [# 44]. Alternatively, in the event that the Court concludes these claims are not within its core or related to jurisdiction, the Plaintiffs argue

---

[2]The First Circuit did not address the issue of preemption which formed the basis of the district court's first appellate decision in *Nosek*, in which the district court remanded the matter to this Court for further consideration in light of its conclusion that the Bankruptcy Code had preempted certain federal and state law causes of action. *Nosek v. Ameriquest Mortgage Company*, 354 B.R. 331 (D. Mass. 2006) ("*Nosek I*").

5

that the Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as these counts arise out of the same set of facts as their counts for violation of the automatic stay and violations of the discharge injunction, both of which the Defendants concede come within the Court's core jurisdiction. The Plaintiffs argue that the Fifth Circuit's decision in *Morrison v. Western Builders of Amarillo, Inc. (In re Morrison*), 555 F.3d 473 (5th Cir. 2009), cited by the *Eastman* court supports such an expansive view of bankruptcy court jurisdiction.

**DISCUSSION**

Initially the Court must determine whether it has jurisdiction to adjudicate Counts III through VIII. If it does not, those counts cannot be tried in this Court.

In determining whether a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) should be granted when the facts essential to the jurisdictional challenge are not in dispute, a court "accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363-64 (1st Cir. 2001). All reasonable inferences must be drawn in favor of the Plaintiff. *Id.* Moreover each count must come within the Court's subject matter jurisdiction. *Ralls v. Docktor Pet Centers, Inc.,* 177 B.R. 420, 425 (D. Mass.1995). Even though the Plaintiffs are aided by the acceptance of their version of the facts and all reasonable inferences, the burden remains with them to establish jurisdiction. As set forth below, the Plaintiffs have failed to meet that burden.

Bankruptcy courts, like other lower federal courts, cannot create its own jurisdiction; they have only the jurisdiction permitted under the Constitution and given to them by Congress.

*Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995). With the passage of 28 U.S.C. § 1334, Congress invested the district courts with original and exclusive jurisdiction for cases "under title 11," that is, the actual bankruptcy case commenced by the filing of a petition, and original but not exclusive jurisdiction for civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a) and (b). Congress also granted the district courts the power to refer bankruptcy cases as well as civil proceedings which arise in or under the Bankruptcy Code and those related to bankruptcy cases to the bankruptcy courts. 28 U.S.C. § 157(a). In Massachusetts, the district court has referred the broadest possible universe of cases which a bankruptcy court could hear, namely all cases over which the district court may exercise jurisdiction under either § 1334(a) or (b). LR, D. Mass 201.

An adversary proceeding, which is a civil proceeding, "arises under" the Bankruptcy Code, if it involves a "cause of action created or determined by a statutory provision of title 11." *Wood v. Wood (In re Wood),* 825 F.2d 90, 96 (5th Cir. 1987). In contrast, proceedings "arising in" a bankruptcy case "are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* at 97. Together, proceedings that "arise in" and "arise under" title 11 constitute the bankruptcy court's "core" jurisdiction. *See* 28 U.S.C. § 157(b); *Id.* at 96-97. None of Counts III through VIII come within the Court's core jurisdiction. They are not causes of action created by the Bankruptcy Code; each of them can exist outside of the bankruptcy case.

A bankruptcy court has jurisdiction over a non-core proceeding provided the proceeding is "related to" a bankruptcy case. The breadth of the bankruptcy court's related to jurisdiction is great but not unlimited. "The usual articulation of the test for determining whether a civil

proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir. 1991) (quoting *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)). Proceedings which are outside the boundaries of § 1334(a) or (b), that is, proceedings which do not fall even within the "related to" jurisdiction, are outside of the subject matter jurisdiction of a bankruptcy court. *Nickless v. Aaronson (In re Katz)*, 341 B.R. 123, 127-28 (Bankr. D. Mass. 2006).

Here the Plaintiffs are Debtors in a Chapter 7 case. Each of the acts complained of occurred post-petition. Their claims arising from post-petition actions are not property of the estate. 11 U.S.C. § 541(a)(1); *In re Deceder*, 351 B.R. 261 (Bankr. D. Mass. 2006), *In re Steele*, 258 B.R. 319 (Bankr. D.N.H. 2001). Whatever the outcome of these causes of action, the Debtors' estates will be unaffected. Therefore the Court lacks "related to" jurisdiction.

The Plaintiffs argue that nevertheless the Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as all of the causes of action arise from the same set of facts. By its very language that section applies only to *district* courts.[3] This Court has previously rejected the idea that a non-article III court, such as the bankruptcy court, could exercise supplemental

---

[3] 28 U.S.C. § 1367(a) provides:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

jurisdiction. *In re Perez,* 2008 WL 4164372, *4 (Bankr. D. Mass. 2008). *See also In re Adamson*, 334 B.R. 1, 12 (Bankr. D. Mass.2005) (argument that bankruptcy courts have supplemental jurisdiction is a "dubious proposition"); *In re Found. for New Era Philanthropy*, 201 B.R. 382, 398 (Bankr. E.D. Pa. 1996) (deciding that bankruptcy courts do not have supplemental jurisdiction because § 1367 "makes no reference to the bankruptcy court"); *In re Remington Development Group, Inc*. 180 B.R. 365, 373 (Bankr. D.R.I. 1995) ("Section 1367's supplemental jurisdiction grant extends district court jurisdiction virtually to the limits of Article III.... It would be anomalous to conclude that the bankruptcy court, which obtains jurisdiction by circumscribed statutory reference from the district court, may exercise § 1367 supplemental jurisdiction at the outer limits of Article III.... To conclude otherwise is asking to run another *Marathon*.").

The Plaintiffs, however, urge the Court to examine its jurisdiction in light of the Fifth Circuit's decision in *Morrison*, a case that involved the question of whether a bankruptcy court may enter a monetary judgment in a nondischargeability action. Although the First Circuit Court of Appeals has not addressed that question,[4] the *Morrison* court joined every other circuit to have

---

[4] The Bankruptcy Appellate Panel for the First Circuit addressed the issue in *Cambio v. Mattera (In re Cambio)*, 353 B.R. 30 (1st Cir. BAP 2004). The majority held that bankruptcy courts lack jurisdiction, at least in cases where there are no assets available for distribution to creditors, and vacated the money judgment entered by Judge Volalato. I dissented on the basis that discretion to liquidate the debt should remain with the trial court, which could exercise jurisdiction over the entire proceeding in the interests of judicial economy and the efficient use of judicial and litigant resources. In this district, Judge Hillman, a member of the panel majority in *Cambio*, and Chief Judge Boroff have held that bankruptcy courts lack jurisdiction to liquidate nondischargeable debts in no asset cases while Judge Feeney and I have found such jurisdiction exists. *See Rinella v. Bartlett ( In re Bartlett)*, 397 B.R. 610, 623 n. 13 (Bankr. D. Mass. 2008) (Chief Judge Boroff); *Baker v. Friedman (In re Friedman)*, 300 B.R. 149 (Bankr. D. Mass. 2003)( Judge Feeney).

addressed this issue by finding jurisdiction.[5]

The bases for the circuit decisions prior to *Morrison* are varied. For example, the Ninth Circuit was persuaded by the bankruptcy court's reasoning in *In re Devitt,* 126 B.R. 212, 215 (Bankr. D. Md. 1991), in which the bankruptcy court stated:

> If it is acknowledged as beyond question that a complaint to determine dischargeability of a debt is exclusively within the equitable jurisdiction of the bankruptcy court, then it must follow that the bankruptcy court may also render a money judgment in an amount certain without the assistance of a jury. This is true not merely because equitable jurisdiction attaches to the entire cause of action but more importantly because it is impossible to separate the determination of dischargeability function from the function of fixing the amount of the non-dischargeable debt.

The Sixth Circuit was also persuaded by the *Devitt* court's reasoning as well as the additional pragmatic considerations addressed by the Seventh Circuit in *Halloran*. Although the Seventh Circuit concluded that the bankruptcy court correctly struck the debtor's demand for a jury trial, it noted that there could be instances in which a jury trial on the issue of liability or damages might be appropriate. "Requiring the empaneling of a jury in bankruptcy court in the midst of the dischargeability proceedings, or perhaps referring the matter back to district court for

---

[5]*See Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017-18 (9th Cir. 1997); *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965-66 (6th Cir. 1993); *Abramowitz v. Palmer,* 999 F.2d 1274, 1278-79 (8th Cir. 1993); *N.I.S. Corp. v. Hallahan (Matter of Hallahan)*, 936 F.2d 1496, 1508 (7th Cir. 1991). The *Morrison* court also cited *Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159, 163-65 & n. 7 (2d Cir. 1995), as analogous. *Porges*, citing *McLaren*, *Halloran*, and *In re Devitt*, 126 B.R. 212 (Bankr. D. Md. 1991), held that the bankruptcy court had jurisdiction to enter a money judgment valuing a creditor's claim under 11 U.S.C. § 502(b) even though the debtor dismissed his chapter 13 case after the adversary proceeding had been tried but before a judgment had entered. "[I]t is illogical to separate the function of determining the validity of a claim from the function of fixing the claim's monetary value." *Porges,* 44 F.3d at 164.

a jury trial there, creates a cumbersome process." *Hallahan,* 936 F.2d at 1508.

In *Morrison* the court noted that a bankruptcy court's exercise of jurisdiction in liquidating a debt held to be nondischargeable in a no asset case "stands in tension with the predominant theory of bankruptcy court jurisdiction." *Morrison*, 555 F.3d at 478.

> Although determining that a debt is nondischargeable is plainly a "core" proceeding governed by a specific provision of the Bankruptcy Code, the rendition of a monetary judgment in favor of the creditor on that debt is not itself a core proceeding and, further, is not clearly related to the bankruptcy case or administration of the debtor's estate. Indeed, that portion of the judgment has, in the usual case, no bearing on the bankruptcy case because it requires the debtor to pay a single debt outside of, apart from, and even after the completion of bankruptcy, and it frees the creditor thereafter from limiting its collection efforts to those afforded by the bankruptcy system.

*Id.* at 479. Indeed the "tension" did not escape the notice or criticism of commentators. *See* Honorable Alan Ahart, "*Enforcing Nondischargeable Money Judgments: the Bankruptcy Courts' Dubious Jurisdiction*," 74 Am Bank. L. J. 115, 127-28 (2000); Ralph Brubaker, "*On the Nature of Federal Bankruptcy Court Jurisdiction: A General Statutory and Constitutional Theory*," 41 Wm. & Mary L. Rev. 743, 911 (2000). Nevertheless the *Morrison* court agreed that the approach, based on "tradition and pragmatism," made sense.

> "Traditionally," under Section 17(c)(3) of the 1898 Bankruptcy Act, bankruptcy courts were empowered to enter such money judgments. *See* 11 U.S.C. § 35(c)(3) (repealed 1978). The Bankruptcy Code did not specifically codify this authority upon its enactment in 1978, but, as one court noted, the Code authorized bankruptcy courts generally to hear all core proceedings, including nondischargeability complaints, and to "enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1), (2)(I); *In re Kennedy,* 108 F.3d at 1017. It is not unreasonable to conclude that Congress, which intended bankruptcy courts to exercise far more expansive jurisdiction under the Code than under previous law, could not have intended to cut back on their ability to enter money judgments in the core proceedings encompassed by non-dischargeability complaints.
> The pragmatic reasoning adopted by most circuit courts is hard to contradict. Logically, the litigation necessary to prove nondischargeability also proves the basis for and amount of the debt. There would be no judicial efficiency in requiring the beneficiary of a

> nondischargeability judgment to pursue a separate lawsuit in state or federal court in order to secure a money judgment against the debtor. Moreover, entry of judgment for the debt is proper because the court actually determined "the existence and validity of the debt" in a core proceeding. *In re McLaren,* 990 F.2d 850 at 854.

*Morrison*, 555 F.3d at 479.

Professor Brubaker revisited the jurisdictional tension identified by the *Morrison* court after the decision was published. Recognizing that bankruptcy court jurisdiction to liquidate a nondischargeable debt "cannot be reconciled with any of the prevailing "tests" for the existence of federal bankruptcy jurisdiction," Professor Brubaker concluded that the exercise of such jurisdiction "can only be explained by principles of supplemental jurisdiction, [and] the circuits courts' uniform approval of this jurisdiction is both a sub rosa repudiation of *Pacor* and an implicit (if grudging) acceptance of the notion that third-party 'related to' bankruptcy jurisdiction is simply a codification of conventional principles of supplemental jurisdiction." Ralph Brubaker, "*Bankruptcy Court Jurisdiction to Enter a Money Judgment on a Nondischargeable Debt: Exposing Pacor's Deficiencies and the True Supplemental Nature of Third-Party 'Related To' Bankruptcy Jurisdiction,*" 29 No. 4 Bankr. Law Letter 1 (2009).

The First Circuit has not addressed the issue of whether bankruptcy courts may exercise supplemental jurisdiction and, if so, the boundaries of such jurisdiction. Yet this Court is mindful of the limitations on bankruptcy court jurisdiction arising from the fact that bankruptcy judges are not Article III judges. Moreover, the First Circuit has adopted the *Pacor* test as establishing the outside boundaries for "related to" jurisdiction. Whatever the First Circuit's ultimate answer to the question of whether a bankruptcy court has jurisdiction to liquidate a nondischargeable claim in a no asset case, the leap that the Plaintiff's advocate this Court now take would bring this Court so far down the proverbial slippery slope that it would cross over the boundaries set by Article III.

Consequently the Court cannot exercise supplemental jurisdiction over Counts III through VIII.

Although the Court could stop at this juncture and simply dismiss counts III through VIII, the Court will follow the procedure espoused by other courts, namely granting the Plaintiffs an opportunity to have the district court withdraw the reference.  *See, e.g., In re County Seat Stores, Inc.*, 2007 WL 4191946, 4 (Bankr. N.D. Tex. 2007).   Should the district court then determine it has jurisdiction and chooses to withdraw the reference, the parties will still have a single forum in which to try this proceeding.  Failing withdrawal of the reference, however, the Court will dismiss Counts III through VIII for lack of subject matter jurisdiction.

**CONCLUSION**

For the foregoing reasons, the Court will enter orders giving the Plaintiffs 30 days within which to move the district court for withdrawal of the reference.  If the Plaintiffs fail to timely seek withdrawal, or if the reference is not withdrawn within 90 days, the Court will dismiss Counts III through VIII of the Amended Complaint.

Separate orders will issue.

Dated: August 12, 2009

_____
Judge Joel B. Rosenthal
United States Bankruptcy Judge